IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLAUSEN MILLER, P.C., | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 CV 0851 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| CITIBANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Clausen Miller, P.C., filed a one-count complaint against defendant Citibank, N.A., alleging that defendant violated 810 ILCS 5/4-302 by failing to timely return and dishonor a check, and that defendant is accountable to plaintiff for the amount of the check ($372,640) plus interest. The parties have filed cross-motions for summary judgment. For the reasons below, the court denies plaintiff's motion for summary judgment and grants defendant's motion for summary judgment.[1]

## FACTS[2]

On July 11, 2008, plaintiff Clausen Miller, P.C., received a check payable to it in the amount of $372,640 and drawn on an account at defendant Citibank. Plaintiff deposited the check into its Chicago bank account at Bank of America ("BofA") on July 14, 2008, and BofA conditionally credited plaintiff's account in the amount of the check. BofA then sent the physical

---

[1] Defendant has also moved to strike plaintiff's response to defendant's L.R. 56.1 statements. That motion is denied as moot.

[2] Unless otherwise indicated, the following are uncontested facts from plaintiff's and defendant's L.R. 56.1 statements.

check to the Federal Reserve Bank Philadelphia ("Fed Philadelphia"). Defendant received the physical check from the Fed Philadelphia on July 16, 2008.[3] Defendant determined it was counterfeit, and prepared a notice to BofA through the Electronic Advance Return Notification System ("EARNS") informing BofA that it was dishonoring the check.[4] Defendant sent that EARNS notice at 7:29 p.m. on July 17, 2008. Also on July 17, 2008, defendant returned the physical check to the Fed Philadelphia by giving it to a courier as part of a bundle of items to be returned to the Fed Philadelphia. The courier picked up the bundle at 7:50 p.m. on July 17, 2008, and delivered it to the Fed Philadelphia at 9:20 p.m. on that date. BofA picked up the EARNS notice at 8:41 a.m. on July 18, 2008, and thereupon revoked the credit to plaintiff's account in the amount of the check. BofA notified plaintiff at approximately 1:00 p.m. on July 18, 2008, that the check had been dishonored.

Plaintiff's complaint claims that defendant's return of the check was untimely under 810 ILCS 5/4-302 ("§ 4-302"). Section 4-302 (corresponding to that section of the Uniform Commercial Code) provides that "[i]f an item is presented to and received by a payor bank, the bank is accountable for the amount of . . . a demand item, other than a documentary draft, whether properly payable or not, if the bank, in any case in which it is not also the depositary

---

[3] Plaintiff maintains that defendant received the check on July 15, 2008, but has acknowledged that any dispute about when defendant received the check is immaterial. If plaintiff is correct that defendant did not return the check until July 18, 2008, then defendant would be liable regardless of whether it received the check on July 15 or July 16, 2008.

[4] EARNS is standard banking software that financial institutions use to provide notice of nonpayment of checks to depository banks. Using EARNS satisfies a financial institution's duty to provide notice of nonpayment of items over $2500. 12 C.F.R. § 229.33(a) (requiring a paying bank to provide notice of nonpayment of a check over $2500 by the depository bank by 4:00 p.m. on the second business day following the banking day on which the check was presented to the paying bank).

bank, retains the item beyond midnight of the banking day of receipt without settling for it or, whether or not it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline." § 4-302(a)(1). Plaintiff alleged that defendant received the check on July 15, 2008, and dishonored it and returned it to BofA on July 18, 2008. Defendant's answer denied that it received the check on July 15, 2008, and denied that its return of the check was untimely because, for purposes of § 4-302, defendant returned the check on July 17, 2008.

The day after defendant filed its answer, the parties filed a joint status report. In that report, plaintiff acknowledged that defendant provided notice of its return of the check at 7:29 p.m. on July 17, 2008, but maintained its position that defendant received the check on July 15, 2008, and did not return it until July 18, 2008. Defendant stated that it received the check on July 16, 2008, returned the check for purposes of § 4-302 on July 17, 2008, and returned the check, for purposes of 12 C.F.R. § 229.33(a) (a provision not at issue in this case), to BofA on July 18, 2008.

Less than two months after the parties filed their joint status report, they conferred to discuss the possibility of reaching factual stipulations. Each party requested that the other follow up on certain questions regarding how the check was received and returned. A few weeks later, defendant informed plaintiff that it had returned the check, using a courier, to the Fed Philadelphia on July 17, 2008. On March 26, 2010, defendant filed an update to its statement in the joint status report, clarifying that it returned the check to the Fed Philadelphia before midnight on July 17, 2008, and provided notice of the return to BofA at 7:29 p.m. on July 17,

2008, and that BofA received notice of the return at 8:41 a.m. on July 18, 2008.

# DISCUSSION

## I. Summary Judgment

**Legal Standard**

The parties have filed cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56. A movant is entitled to summary judgment when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Village Church v. Village of Long Grove, 468 F.3d 975, 988 (7th Cir. 2006). The moving party bears the initial burden of pointing out the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met that burden, the nonmoving party must go beyond the pleadings and "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 322-23. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994).

## II. Cross-Motions for Summary Judgment

Under the banking article of the Illinois UCC, defendant is liable to plaintiff for the amount of plaintiff's dishonored check if defendant did not "return the item or send notice of dishonor" check before midnight of the next banking day after it received the check. § 4-

302(a)(1). In the instant case, that deadline is midnight on July 17, 2008. The definitional section of UCC Article 4 defines "midnight deadline" for a bank as "midnight on its next banking day following the banking day on which it receives the relevant item . . . ." 810 ILCS 5/4-104(a)(10). Section 104(a)(3) defines "banking day" as "the part of a day on which a bank is open to the public for carrying on substantially all of its banking functions . . . ."

The parties dispute whether defendant returned the check in a timely manner, according to the statutory meaning of "return." Although plaintiff attempts to frame this disagreement as a factual one, the undisputed record evidence leaves no material fact in dispute; the true issue is what the statutory meaning of "return" is. The undisputed facts establish that defendant's return of the check was timely under § 4-302.

Defendant offers extensive and uncontested evidence that it returned the check before midnight on July 17, 2008. In support of its position, defendant provides the affidavit of Brian Todd, a Vice President and Senior Manager of defendant, who has personal knowledge of defendant's processes regarding receipt and return of checks, along with a number of its business records that verify Todd's testimony and are properly authenticated and admissible as business records under Fed. R. Evid. 803(6). Todd's affidavit establishes the following facts: BofA received the check on July 15, 2008. The next day, it electronically transmitted the check to the Federal Reserve Bank, which printed the check and, using a courier service, physically delivered the check to defendant. A report entitled "Reco Cash Letter Details," dated July 16, 2008, identifies the check by its check number and establishes that defendant received it on July 16, 2008. The next day (July 17), defendant prepared an EARNS notice, which was transmitted at 7:29 p.m. on July 17, 2008, informing BofA that defendant was dishonoring and returning the

check. Further, and most importantly, defendant included the physical check in a bundle of items to be delivered by courier to the Fed Philadelphia on July 17, 2008. The Fed Philadelphia received the check at 9:20 p.m. on July 17, 2008.

Finally, defendant provides an official business record, a report entitled "Citibank Delaware Add On Returns Report," which is dated July 17, 2008, and which shows defendant included the check in the bundle of items to be delivered by courier to the Fed Philadelphia. The report shows the courier picked up the bundle at 7:50 p.m. on July 17, 2008. Defendant also offers a copy of the official courier delivery record, which shows that the bundle was delivered to the Fed Philadelphia at 9:20 p.m. on July 17, 2008.

In contrast, plaintiff does not offer any evidence to support its motion for summary judgment. Instead, it argues that defendant has conceded, in its answer and in the joint status report, that its return of the check was untimely by stating that it "returned the actual check to BofA at 8:41 a.m. on July 18, 2008, which was the second day after the check was presented to [defendant] Citibank." Plaintiff's position, however, is unsubstantiated by any evidence and reflects a misunderstanding of the relevant law. First, the statement in the answer does not, in fact, concede that the return of the check was untimely. Second, defendant's statement in the joint status report is not a judicial admission. Third, even if that statement were a judicial admission, plaintiff has misconstrued it. Contrary to plaintiff's interpretation, the context of the statement reveals that it does not refer to the "return" of the check for purposes of § 4-302.

Defendant's answer does not, as plaintiff claims, concede that defendant's return of the check was untimely. Defendant "admits that it dishonored the Check and returned the Check to BofA," which according to plaintiff is "directly contrary to its current position that it returned the

6

check to the Federal Reserve Bank." These statements, however, are not mutually inconsistent. Defendant's position is that it returned the check to BofA by sending an EARNS notice, and that it returned the check to the Fed Philadelphia for purposes of the statute under which plaintiff has brought this lawsuit. This is clear from the face of defendant's answer, in which defendant denies plaintiff's allegation that it "dishonored and returned the Check on July 18, 2008, . . . and therefore, pursuant to § 4-302, [defendant] Citibank is accountable to Plaintiff for the amount of the Check."

Next, despite plaintiff's assertions to the contrary, defendant's statement in the joint status report is not a judicial admission. Judicial admissions are "formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them [and] have the effect of withdrawing a fact from contention." Keller v. United States, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995). But a joint status report is neither a pleading, see Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1430 n.6 (7th Cir. 1996) ("The joint status report is certainly not a pleading."), nor a stipulation. This statement, therefore, is not a judicial admission binding on defendant. While the Seventh Circuit has suggested that "arguably" a statement made in the brief of a party opposing a motion under consideration "*may* be treated as an admission," United States v. One Heckler-Koch Rifle, 629 F.2d 1250, 1253 (7th Cir. 1980) (emphasis added), a statement made in a joint status report does not fall into that category of judicial admissions because the purpose of the report is to inform the court of the nature of the case and assist in case

management, rather (as in the case of a brief) to decide a contested issue or, as in the case of a Rule 36 request to admit, to establish a fact.[5]

Moreover, regardless of whether the statement in the joint status report constitutes an admission, plaintiff's interpretation of the statement is misleading and incorrect. The statement reads: "*In this regard*, [defendant] Citibank returned the actual check to BofA at 8:41 a.m. on July 18, 2008, which was the second day after the check was presented to Citibank." This is the last sentence in a paragraph discussing defendant's duty to notify the depositary bank that it was returning the check, and it is patently clear from the context and the connecting prepositional phrase ("In this regard") that this statement is meant to convey the time and date on which BofA (not the Fed Philadelphia) received the check from defendant. In the preceding paragraph, defendant states that it "returned the check at 7:29 p.m. on July 17, within the time allowed under the statute." Several paragraphs later, in the context of listing the principal factual issues in the case, defendant again discusses "its return of the check before midnight on July 17, 2008." Taking the answer as a whole, defendant's statement that it "returned the check to BofA . . . on July 18, 2008" must be construed as stating that defendant returned the check to BofA via the Fed Philadelphia (as the facts establish).

Without this purported judicial admission, there is no genuine issue of material fact as to when plaintiff returned the check. All the evidence before the court points to one conclusion: defendant returned the check on July 17, 2008, by giving it to a courier to deliver to the Fed

---

[5] The court does not mean to imply that the parties' statements of fact in a joint status report should be treated casually. The court relies on these reports to frame the issues in connection with case management, mindful that they are prepared at an early stage of the litigation and often do not articulate the parties' ultimate positions.

Philadelphia; the courier picked up the check from defendant at 7:50 p.m. and delivered it to the Fed Philadelphia at 9:20 p.m. on July 17, 2008.

Finally, plaintiff argues that it would have been able to offer evidence in support of its position if it had conducted discovery, which plaintiff claims it believed was unnecessary because it intended to rely on defendant's "admission." According to plaintiff, because defendant failed to update its statement in the joint status report until six months after the parties had filed the report, and at which point discovery had closed, plaintiff was led to believe that it did not need to conduct extensive discovery until it was too late to do so. That might have been a legitimate grievance (albeit one that should have been addressed in a request to defendant or the court to conduct further discovery, rather than in a summary judgment motion, after discovery closed),[6] except that the initial joint status report clearly shows that defendant intended to argue that it returned the check on July 17, 2008. Section II of the joint status report lists "the date on which [defendant] Citibank returned the check" as a "principal factual issue." In addition, one paragraph before the supposed admission, defendant states that it "returned the check at 7:29 p.m. on July 17, within the time allowed under the statute," and it is clear that its reference to the return to BofA was inserted for purposes of the notice requirement under 12 C.F.R. § 229.33(a). Plaintiff thus had adequate notice that defendant was planning to contest this issue, and could have asked for further discovery if it, however belatedly, came to realize that.

Plaintiff also argues that defendant's filing of its updated statement in the joint status report was improper because defendant did not seek leave to file a new statement. Although the

---

[6] The court notes that, on January 19, 2010, the original discovery cutoff of that date was extended by agreement to February 19, 2010, prior to setting the summary judgment schedule.

9

court does not have a specific rule for amending joint status reports, it agrees with plaintiff that defendant should have requested leave to amend. Plaintiff did not, however, lodge an objection to the amendment, nor did plaintiff file a Rule 56(f) affidavit demonstrating the need for future discovery in connection with defendant's motion for summary judgment. Plaintiff's attempt to bind defendant to a supposed "admission" that contradicts what are obviously uncontestable facts amounts to "gotcha" litigation that seeks to bend reality to accomplish a result that is contrary to the law and the facts.

Fundamentally, therefore, the facts demonstrate that defendant returned the check to the Fed Philadelphia before midnight on July 17, 2008. The sole remaining issue is what constitutes a "return" for purposes of § 4-302. This disagreement is easily resolved, in favor of defendant. Section 4-302 "requires the payor bank that wishes to dishonor a check to dispatch it (for example, by putting it in the mail), either to the depository bank or to a 'returning' bank for forwarding to the depository bank, by midnight on the next banking day after the banking day on which the payor bank had received the check." Oak Brook Bank v. Northern Trust Co., 256 F.3d 638, 639 (7th Cir. 2001). Federal Reserve banks are considered appropriate "returning" banks. Id. at 638. Therefore, defendant satisfied its obligation under § 4-302 by returning the check to the Fed Philadelphia before midnight on July 17, 2008, as established by all the evidence. Plaintiff has provided no evidence that defendant was late in returning the check and thus fails to create a question of material fact on the only remaining issue in this case. Defendant, on the other hand, has provided persuasive, uncontested evidence that it returned the check in compliance with the statute.

## CONCLUSION

For the reasons discussed above, the court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment.

**ENTER:** September 14, 2010

_____
**Robert W. Gettleman
United States District Judge**